```
                    UNITED STATES DISTRICT COURT
                              FOR THE
                         DISTRICT OF VERMONT
```

LARRY DROWN,                        :
                                    :
        Plaintiff,                  :
                                    :
    v.                              :   Case No. 2:14-cv-80
                                    :
TOWN OF NORTHFIELD,                 :
                                    :
        Defendant.                  :

## OPINION AND ORDER

This case arises out of disputes between Plaintiff Larry Drown and Defendant Town of Northfield ("the Town") regarding Drown's alleged zoning violations. The Town ultimately filed at least one enforcement action in state court which resulted in a judgment against Drown and subsequent foreclosure proceedings. Drown comes to this Court claiming due process violations and malicious prosecution.

Now before the Court are the Town's motion to dismiss for failure to state a claim, Drown's motion for injunctive relief, and the Town's supplemental motion to dismiss for lack of jurisdiction. The supplemental motion seeks dismissal under the *Rooker-Feldman* doctrine, and if appropriate, abstention under the Supreme Court's ruling in *Younger v. Harris*, 401 U.S. 37 (1971). For the reasons set forth below, the Town's supplemental motion to dismiss is **granted**, its initial motion to dismiss and Drown's pending motion are **denied** as moot, and this case is **dismissed** for lack of subject matter jurisdiction.

Factual Background

In October 2005, Drown submitted an application to the Town seeking conditional use approval for a 60 foot by 100 foot commercial building located at 11 Wall Street in Northfield ("the Wall Street property"). The application described the use of the proposed structure as a store for "retail & personal service." ECF No. 1-2 at 1. A hearing was held on November 17, 2005, after which the Board of Adjustment approved the use with conditions, including the planting of trees for screening and a limitation on lighting.

The application was heard by the Town Planning Commission on January 16, 2006. The Planning Commission's decision, issued 14 days later, reported that "Mr. Drown is constructing a spec building which will be rented and used as described for retail automobile repair, tire shop, and/or storage of service delivery vehicles." ECF No. 1-5 at 2. The application was approved unanimously.

On July 8, 2008, the Town sent Drown a Notice of Violation stating that the use of the Wall Street property was not consistent with the zoning approvals. The Notice set forth four alleged violations. The first stated that the approved use was for a "Retail and Personal Services Store," and that instead "[t]he property is being used for a combination of auto repair, auto recycling, and junkyard. None of these uses is consistent

2

with the definition of Retail and Personal Service Store, the approved uses of the property." ECF No. 1-6 at 1. The second alleged violation accused Drown of establishing or maintaining an unapproved junkyard. Third, the Notice alleged that Drown had established an office in a travel trailer without a permit. The fourth charge alleged that Drown had not planted adequate trees for screening. The Notice of Violation gave Drown seven days to come into compliance, and warned that failure to comply might result in the Town pursuing the matter in court, "where the Town of Northfield may seek injunctive relief and fines up to $100.00 per day." The Notice also informed Drown of his right to appeal to the Zoning Board of Adjustment ("ZBA"). Drown did not appeal to the ZBA.

On October 7, 2008, the Town filed a municipal enforcement action against Drown and others in the state court Environmental Division.[1] The court granted summary judgment to the Town, concluding that Drown's substantive arguments were barred as a matter of law for failure to appeal to the ZBA. The court further noted that "the only way around these strict rules of finality would be if Defendants could claim . . . a constitutional violation, such as a violation of Defendants'

---

[1] Other Defendants included Jason Law, who operated a business at the Wall Street property, and Kenneth Strong, who was allegedly involved with Drown in an unapproved lot line adjustment. The lot line adjustment increased the size of the Wall Street property.

constitutionally-protected civil or due process rights." ECF No. 16-2 at 7. Given that Drown had been given adequate notice of his right to appeal to the ZBA, the court found "no due process or other constitutional violations in the [Notices of Violation] that were issued here." *Id.* In a subsequent order, the state court found that the fines imposed were not inequitable or excessive. Drown appealed to the Vermont Supreme Court, but the appeal was dismissed for failure to pay the filing fee.

On December 9, 2011, the Town filed a state court complaint for foreclosure on the Wall Street property and another property owned, at least in part, by Drown on Western Avenue in Northfield. On May 13, 2013, Judge Robert Bent entered a judgment of foreclosure. In an entry order dated November 24, 2013, the state court bifurcated the Wall Street and Western Avenue matters and extended the redemption date on the Wall Street property to February 21, 2014. On February 20, 2014, the state court extended the redemption period a second time to June 21, 2014. On September 17, 2014, the court issued a certificate of non-redemption and a public sale was scheduled for December 12, 2014. The latest state court order on this Court's docket indicates that the sale was postponed for an additional 30 days while Drown removed his belongings from the property.[2]

---

[2] The Western Avenue property was sold at public sale on May 9, 2014. The state court confirmed the sale on November 11, 2014 and extinguished Drown's right of redemption.

4

Procedural Background

Drown, appearing *pro se*, filed his Complaint in this Court on April 24, 2014. The Complaint alleges that Drown was "aggressively approached" by the Town to sell his land, and that the Town has engaged in a "disingenuous ruse." ECF No. 1 at 8. Drown further claims that the Town violated his "due process right to a fair trial," and that his cause of action includes "malicious prosecution and a Law Firm that was filled with pettifoggers getting into free government money that had no bucket bottom." *Id.*

The Town responded on May 15, 2015 with a motion to dismiss, arguing that Drown had failed to set forth a plausible legal claim. The Town's motion also referenced attachments to the Complaint which, the Town argued, demonstrate that Drown received due process at the municipal level.

On June 3, 2014, Drown filed a *pro se* motion for injunctive relief, asking this Court to postpone the sale of his home on Western Avenue. Among other things, Drown alleges in his motion that he "has serious cognitive memory issues, and the [state court] judge and lawyers are aware of these issues, and that Mr. Drown is unable to represent himself in the fair and proper way." ECF No. 10 at 3. The Town subsequently notified the Court that a state court judge had found Drown incompetent, and requested that the Court either appoint Drown counsel pursuant to Fed. R.

Civ. P. 17(c)(2) or dismiss this case without prejudice. ECF No. 12. On December 17, 2014, the Court appointed counsel to represent Drown *pro bono* for the limited purpose of addressing the pending motions.

The Town has since filed a second, supplemental motion to dismiss this case for lack of jurisdiction. That motion cites the state court proceedings and argues for dismissal pursuant to the *Rooker-Feldman* doctrine and, if appropriate, *Younger* abstention. Both motions to dismiss, as well as Drown's motion for an injunction, are now before the Court. Most recently, the Court granted Drown's counsel's motion to withdraw from the case due to her inability, as stated in her motion, "to reach an accord with Plaintiff regarding the matter at issue." ECF No. 20 at 1.

## Discussion

The Court must first address the Town's jurisdictional arguments submitted pursuant to Fed. R. Civ. P. 12(b)(1). *See Rhulen Agency, Inc. v. Alabama Ins. Guar. Ass'n*, 896 F.2d 674, 678 (2d Cir. 1990) (noting that when a court is presented with motions to dismiss under both Rules 12(b)(1) and 12(b)(6), the court should first address subject matter jurisdiction under Rule 12(b)(1)). A court will grant a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction if the court is not authorized by statute or the Constitution to adjudicate the

plaintiff's claims.  *See Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000).  In determining whether subject matter jurisdiction exists, the court may look to evidence outside the complaint.  *See Kamen v. Amer. Tel. & Tel. Co.*, 791 F.2d 1006, 1011 (2d Cir. 1986).  The party asserting subject matter jurisdiction has the burden of proving its existence by a preponderance of the evidence.  *Id.*

The Town's first contention is that Drown's claims are barred by the *Rooker-Feldman* doctrine.  The *Rooker–Feldman* doctrine establishes "the clear principle that federal district courts lack jurisdiction over suits that are, in substance, appeals from state-court judgments."  *Hoblock v. Albany Cnty. Bd. of Elections*, 422 F.3d 77, 84 (2d Cir. 2005); *see District of Columbia Court of Appeals v. Feldman,* 460 U.S. 462, 482 (1983); *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 416 (1923).  "*Rooker–Feldman* bars a losing party in state court from seeking what in substance would be appellate review of the state judgment in a United States district court, based on the losing party's claim that the state judgment itself violates the loser's federal rights."  *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 287 (2005); *see also Bridgewater Operating Corp. v. Feldstein*, 346 F.3d 27, 29 (2d Cir. 2003) ("[F]ederal district courts do not have jurisdiction over claims that have already been decided . . . by a state court.").

As the Second Circuit has explained, "*Rooker-Feldman* directs federal courts to abstain from considering claims when four requirements are met: (1) the plaintiff lost in state court, (2) the plaintiff complains of injuries caused by the state court judgment, (3) the plaintiff invites district court review of that judgment, and (4) the state court judgment was entered before the plaintiff's federal suit commenced." *McKithen v. Brown*, 626 F.3d 143, 154 (2d Cir. 2010). "[T]he applicability of the *Rooker-Feldman* doctrine turns not on the similarity between a party's state-court and federal-court claims . . . but rather on the causal relationship between the state-court judgment and the injury of which the party complains in federal court." *McKithen v. Brown*, 481 F.3d 89, 9798 (2d Cir. 2007), *cert. denied*, 552 U.S. 1179 (2008).

Here, Drown was issued a Notice of Violation and failed to appeal to the ZBA. When the Town brought an action in the Environmental Division of the state court, the court determined that his substantive arguments were procedurally barred and that he had failed to demonstrate a constitutional violation. Drown's appeal to the Vermont Supreme Court was dismissed. Foreclosure judgments have also been entered against his properties. As Drown was clearly the loser in the state court proceedings, the first part of the *Rooker-Feldman* test is satisfied.

The second factor is also satisfied, as Drown is

complaining of injuries caused by the state court's judgment. Although Drown's *pro se* Complaint is not clear with regard to the precise injuries suffered or the relief being sought, the state court records indicate that his losses on the zoning issues provided the basis for subsequent foreclosure proceedings. In his motion for injunctive relief, Drown states that he is in danger of living "on the street" if his mobile home is sold. ECF No. 10 at 3. Accordingly, the proceedings being challenged have resulted in adverse judgments and a loss of property rights.

The third factor asks whether the plaintiff is inviting federal court review of a state court judgment. The lower state court considered Drown's constitutional claims and found that they lacked merit. Drown's appeal to the Vermont Supreme Court was dismissed, and Drown is now challenging the state court rulings, citing an unfair trial. This Court has no power to review those rulings, notwithstanding Drown's claims of unconstitutional conduct. *See Feldman*, 460 U.S. at 486–87 (1983) (holding that a federal district court does not have jurisdiction "over challenges to state court decisions . . . arising out of judicial proceedings even if those challenges allege that the state court's action was unconstitutional"); *Rabinowitz v. New York*, 329 F. Supp. 2d 373, 376 (E.D.N.Y. 2004) ("A plaintiff may not overcome the doctrine and seek reversal of a state court judgment 'simply by casting his complaint in the

9

form of a civil rights action.'" (quoting *Ritter v. Ross*, 992 F.2d 750, 754 (7th Cir. 1993)); *see also Johnson v. Smithsonian Inst.*, 189 F.3d 180, 185 (2d Cir. 1999) (pursuant to the *Rooker-Feldman* doctrine, "among federal courts, only the Supreme Court has subject matter jurisdiction to review state court judgments").

Finally, the injuries relative to Drown's constitutional claims predated his filing of this case. The constitutional questions were addressed by the lower state court in September 2009, and judgment was entered in that case in April 2010. Post-judgment motions were resolved in 2013, and the Vermont Supreme Court dismissed Drown's appeal on May 8, 2013. Judgment of foreclosure was also entered in 2013. Drown filed his federal Complaint on April 24, 2014. The Court therefore concludes that Drown's claims are barred by the *Rooker-Feldman* doctrine, as it has no subject matter jurisdiction over the state courts' determinations.

The Town also notes an ongoing state court proceeding and the possible application of *Younger* abstention. Documents recently submitted by the Town show that as of January 2015, the Wall Street property had not yet been sold. Those same documents indicate continuing state court proceedings governing the date of the sale. While judgment of foreclosure on both the Wall Street and Western Avenue properties was entered prior to the filing of

10

this federal case, a liberal reading of Drown's filings could infer a challenge to those ongoing proceedings. The Town submits that any challenge to such proceedings would be barred by *Younger*.

The Second Circuit has held that "*Younger* abstention is mandatory when: (1) there is a pending state proceeding, (2) that implicates an important state interest, and (3) the state proceeding affords the federal plaintiff an adequate opportunity for judicial review of his or her federal constitutional claims." *Spargo v. New York State Comm'n on Judicial Conduct*, 351 F.3d 65, 75 (2d Cir. 2003). In *Sprint Commc'ns, Inc. v. Jacobs*, 134 S. Ct. 584, 591-92 (2013), however, "the Supreme Court rejected this three-part test in favor of a categorical approach." *Mir v. Shah*, 569 F. App'x 48, 50 (2d Cir. 2014). *Sprint Communications* held that the *Younger* doctrine applies only to three classes of state court proceedings: 1) "state criminal prosecutions"; (2) "civil enforcement proceedings"; and (3) civil proceedings that "implicate a State's interest in enforcing the orders and judgments of its courts." 134 S. Ct. at 588 (internal quotation marks omitted); *see id.* at 591 ("We have not applied *Younger* outside these three 'exceptional' categories, and today hold . . . that they define *Younger*'s scope.").

Because Drown's state court cases do not involve either criminal prosecutions or civil enforcement proceedings, the Court

must focus upon the third category: the State's interest in enforcing state court orders and judgments. The third *Sprint Communications* category echoes the Supreme Court's ruling in *Pennzoil v. Texaco Inc.*, 481 U.S. 1 (1987), which reasoned that "[n]ot only would federal injunctions in such cases interfere with the execution of state judgments, but they would do so on grounds that challenge the very process by which those judgments were obtained." 481 U.S. at 13.

In this case, it is not clear whether the Complaint seeks any form of injunctive relief. ECF No. 1 at 8 (asking the Court to "[u]se all the pettifoggers amended complaint against the truth that was easily found in Northfield Town Records"). Drown did file a separate motion for injunctive relief, however, seeking an order enjoining the sale of the Western Avenue property. To the extent that such property is subject to ongoing state court proceedings,[3] the Court might consider whether the third *Sprint Communications* prong applies. The parties have not briefed that specific issue, and other district courts have been reluctant to characterize a foreclosure as the sort of proceeding that warrants abstention under the Supreme Court's most recent jurisprudence. *See, e.g., Tucker v. Specialized Loan Servs., LLC*, 2015 WL 452285, at *6 (D. Md. Feb. 3, 2015); *Brumfield v.*

---

[3] As discussed above, it appears that the Western Avenue property was sold and that Drown's right of redemption was extinguished through the state court's confirmation of the sale.

*U.S. Bank, N.A.*, 2014 WL 7005235, at *3 (D. Colo. Dec. 11, 2014).

That said, Drown's request for injunctive relief is precluded by the Anti-Injunction Act, which provides:

> A court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments.

28 U.S.C. § 2283. This provision applies when the requested injunction would either stay ongoing proceedings or prevent the parties from enforcing an order that has already issued. *See Atlantic Coast Line R.R. Co. v. Brotherhood of Locomotive Eng'rs*, 398 U.S. 281, 287 (1970) ("[T]he prohibition of § 2283 cannot be evaded by addressing the order to the parties or prohibiting utilization of the results of a completed state proceeding."). Courts in this Circuit have held that the Anti-Injunction Act applies to state court foreclosure proceedings. *See Ungar v. Mandell*, 471 F.2d 1163, 1165 (2d Cir. 1972) (holding that the Anti-Injunction Act did not permit injunction of state court foreclosure proceeding); *Billie v. Aurigremma*, 2013 WL 6331358, at *2 (D. Conn. Dec. 5, 2013) (same); *Attick v. Valeria Assocs., L.P.*, 835 F. Supp. 103, 114 (S.D.N.Y. 1992) (same). Accordingly, if Drown is seeking relief with regard to ongoing foreclosure proceedings, his action is statutorily barred.

The Court's final consideration is Drown's current lack of representation. Although the Court previously appointed *pro bono*

13

counsel, that counsel has been granted leave to withdraw due to differences with her client.  The Second Circuit has held that a Court may deny a request for counsel, "even for a minor or incompetent person," when "'it is clear that no substantial claim might be brought on behalf of such a party.'"  *Berrios v. New York City Housing Auth.*, 564 F.3d 130, 134 (2d Cir. 2009) (quoting *Wenger v. Canastosa Cent. School Dist.*, 146 F.3d 123, 125 (2d Cir. 1998)).  Furthermore, while a district court may not make a merits determination of claims filed by an incompetent person, *see Wenger*, 146 F.3d at 134, the Court's determination here pertains to its jurisdiction.  A jurisdictional ruling where it is "clear that no substantial claim might be brought" does not run afoul of Rule 17(c)(2).  *Berrios*, 564 F.3d at 134 (citing *Wenger*, 146 F.3d at 125).

Therefore, for the reasons set forth above, the Town's supplemental motion to dismiss (ECF No. 16) is **granted** and this case is **dismissed without prejudice**.  The Town's initial motion to dismiss (ECF No. 8) and Drown's motion for injunctive relief (ECF No. 10) are **denied** as moot.

DATED at Burlington, in the District of Vermont, this 25th day of March, 2015.

/s/ William K. Sessions III  
William K. Sessions III  
District Court Judge